USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _____

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- x

JOHN VOLPE, *individually and on behalf of others similarly situated*,

                Plaintiff,

-against-

AMERICAN LANGUAGE COMMUNICATION CENTER, INC., d/b/a AMERICAN LANGUAGE COMMUNICATION CENTER, JEAN PACHTER, and PETER PACHTER,

                Defendants.

------------------------------------- x

MEMORANDUM DECISION AND ORDER

15 Civ. 06854 (GBD)

GEORGE B. DANIELS, United States District Court Judge:

    Plaintiff John Volpe brings this action individually and on behalf of others similarly situated against American Language Communication Center, Inc. ("ALCC"), Jean Pachter, and Peter Pachter (collectively, "Defendants"). (*See* Am. Compl. ¶¶ 13–19.) Plaintiff alleges that Defendants violated the minimum wage and overtime provisions of the Fair Labor Standards Act ("FLSA"). (Am. Compl. ¶¶ 67–78.) *See* 29 U.S.C. §§ 206(a), 207(a)(1). Plaintiff also alleges that Defendants violated the minimum wage, overtime, notice and recordkeeping, and wage statements provisions of the New York Labor Law (the "NYLL"). (Am. Compl. ¶¶ 79–95.) Defendants moved to dismiss Plaintiff's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that Plaintiff is exempt from the FLSA and NYLL's minimum wage, overtime and other related provisions. (Defs.' Mem. of Law in Supp. of Mot. to Dismiss ("Defs.' Mem.") at 5, 13, 16, ECF No. 29.)

    Defendants' motion to dismiss is GRANTED.

## I. BACKGROUND

Plaintiff was employed by Defendants ALCC, Jean Pachter, and Peter Pachter from about 2004 through July 2014. (Am. Compl. ¶¶ 2, 37.) ALCC is a New York City English language learning school, (see Am. Compl. ¶¶ 3–5), licensed by the New York State Education Department, (see Malley Decl., Ex. B., ALCC Record, Bureau of Proprietary Sch. Supervision, N.Y. State Educ. Dep't, ECF No. 30-2). Since 2013, ALCC has been accredited by the Commission on English Language Accreditation ("CEA"). (See Malley Decl., Ex. C., ALCC Record, Database of Accredited Postsecondary Institutions and Programs, U.S. Dep't of Educ., ECF No. 30-3.) The U.S. Department of Education has recognized the CEA as an approved national accrediting organization since 2003. (See Malley Decl., Ex. D., CEA Record, U.S. Dep't of Educ., ECF No. 30-4.) ALCC began teaching ESL over twenty-five years ago. (ALCC, *Tour*, http://www.learnenglish.com/tour.htm (last visited July 28, 2016).) ALCC provides students who complete its courses with certificates; however, it does not confer educational degrees, professional licenses, or continuing educational credits on its students. (Am. Compl. ¶¶ 28–29.)

Plaintiff was employed as a teacher of English as a second language ("ESL"). (Am. Compl. ¶ 5.) Defendants paid Plaintiff $15 per hour for the time he spent teaching in class on weekdays and $17 on weekends. (Am. Compl. ¶ 45.) In addition to time spent teaching in class, Plaintiff spent about fifteen hours a week "preparing for his weekday classes, preparing quizzes, attending meetings, and correcting exams at home." (Am. Compl. ¶ 44.) Defendants did not pay Plaintiff for the hours he spent out of class. (Am. Compl. ¶ 46.) Plaintiff alleges that Defendants' failure to pay Plaintiff for his work outside the classroom lowered his rate of pay below the minimum wage. (See, e.g., Am. Compl. ¶ 53.) Plaintiff also alleges that he is entitled

to overtime compensation for the hours he worked in excess of forty hours in a workweek. (Am. Compl. ¶¶ 76, 86.)

Plaintiff claims that Defendants never provided to him—either at the time of his hire or with his wage statements—a statement of his rate of pay, hours worked, or other information required by the New York Labor Law. (*See* Am Compl. ¶¶ 48–49, 51, 57, 62–63, 91, 94.)

## II. STANDARD OF REVIEW

"A Rule 12(b)(6) motion challenges the legal sufficiency of the claims asserted in a complaint." *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, No. 13 Civ. 03180, 2015 WL 5472944, at *13 (S.D.N.Y. Sept. 16, 2015). In deciding a Rule 12(b)(6) motion, a court "accept[s] all factual allegations in the complaint as true . . . and draw[s] all reasonable inferences" in favor of the plaintiff. *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009) (quoting *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008)). A court is "not, however, 'bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions.'" *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (quoting *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008)). In order to survive such a motion, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A court deciding a Rule 12(b)(6) motion is not limited to the face of the complaint. A court "may [also] consider all papers and exhibits appended to the complaint, as well as any matters of which judicial notice may be taken." *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1092 (2d Cir. 1995). "[F]or purposes of a 12(b)(6) motion to dismiss, a court may take judicial

notice of information publicly announced on a party's website, as long as the website's authenticity is not in dispute and 'it is capable of accurate and ready determination.'" *Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 167 (S.D.N.Y. 2015) (quoting *Doron Precision Sys., Inc. v. FAAC, Inc.*, 423 F. Supp. 2d 173, 179 n.8 (S.D.N.Y. 2006)). This Court takes judicial notice of the following facts: ALCC is licensed by the New York State Education Department, ALCC has been accredited by the CEA since 2013, and the U.S. Department of Education has recognized the CEA as an approved national accrediting organization since 2003.[1] This Court also takes judicial notice of the contents of ALCC's website. (ALCC, *Home*, http://www.learnenglish.com/ (last visited July 28, 2016).)

---

[1] Defendants ask this Court to take judicial notice from several documents. (Defs.' Mem. at 4 n.5.) *See Staehr v. Hartford Fin. Servs. Grp.*, 547 F.3d 406, 426 (2d Cir. 2008) ("[M]atters judicially noticed by the District Court are not considered matters outside the pleadings."). Those documents are (1) a record from the New York State Department of Education concerning ALCC (Malley Decl., Ex. B., ALCC Record, Bureau of Proprietary Sch. Supervision, N.Y. State Educ. Dep't, ECF No. 30-2), (2) a record from the U.S. Department of Education's Database of Accredited Postsecondary Institutions and Programs concerning ALCC (Malley Decl., Ex. C., ALCC Record, Database of Accredited Postsecondary Institutions and Programs, U.S. Dep't of Educ., ECF No. 30-3.), and (3) a record from the U.S. Department of Education concerning the CEA (Malley Decl., Ex. D., CEA Record, U.S. Dep't of Educ., ECF No. 30-4). Federal Rule of Evidence 201(b) permits a court to take "judicial[] notice [of] a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Courts routinely take judicial notice of documents retrieved from official government websites. *See, e.g., Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 166 (S.D.N.Y. 2015). Plaintiff has not disputed the veracity or authenticity of these documents. Furthermore, Plaintiff concedes that ALCC is licensed by the New York State Education Department. (Feb. 23, 2016 Tr. at 33:18–21.)

## III. PLAINTIFFS' ALLEGATIONS FAIL TO STATE A CLAIM

Defendants argue that the FLSA's "professional capacity" exemption applies to Plaintiff's employment. (Defs.' Mem. at 5.) "The application of an exemption to the FLSA is an affirmative defense which may be raised in a pre-answer Rule 12(b)(6) motion if the defense appears on the face of the complaint." *Chen v. Major League Baseball Props., Inc.*, 798 F.3d 72, 81 (2d Cir. 2015) (internal citation and quotation marks omitted). "The employer who invokes the exemption bears the burden of establishing that the employee falls within the exemption." *Id.* at 82 (quoting *Mullins v. City of New York*, 653 F.3d 104, 113 (2d Cir. 2011)).

### A. The FLSA's Minimum Wage and Overtime Provisions Do Not Apply to Plaintiff's Employment

The FLSA's minimum wage and overtime provisions do "not apply with respect to—any employee employed in a bona fide . . . professional capacity." 29 U.S.C. § 213(a)(1). Regulations promulgated by the Department of Labor ("DOL") explain that:

> The term "employee employed in a bona fide professional capacity" in section 13(a)(1) of the Act also means any employee with a primary duty of teaching, tutoring, instructing or lecturing in the activity of imparting knowledge and who is employed and engaged in this activity as a teacher in an educational establishment by which the employee is employed.

29 C.F.R. § 541.303(a). Plaintiff concedes that he was employed as a teacher and had the primary duty of teaching. The determinative question before this Court is whether ALCC is an educational establishment. (*See* Pl.'s Mem. of Law in Opp'n to Defs.' Mot. to Dismiss ("Pl.'s Mem.") at 5 n.1, ECF No. 34.) If it is, then ALCC is exempt from the FLSA's minimum wage and overtime provisions, and Plaintiff's FLSA claims must be dismissed. *See* 29 U.S.C. § 213(a)(1).

The DOL's regulations explain that "[t]he term 'educational establishment' means an elementary or secondary school system, an institution of higher education or other educational

institution."[2] 29 C.F.R. § 541.204(b). The parties agree that ALCC can qualify as an "educational establishment" only if it is an "other educational institution" because ALCC is neither "an elementary or secondary school system" nor "an institution of higher education." (*See* Defs.' Mem. at 6; Pl.'s Mem. at 5.)

> The relevant DOL regulation further specifies that:
>
> the term "other educational establishment" includes special schools for mentally or physically disabled or gifted children, regardless of any classification of such schools as elementary, secondary or higher. Factors relevant in determining whether post-secondary career programs are educational institutions include whether the school is licensed by a state agency responsible for the state's educational system or accredited by a nationally recognized accrediting organization for career schools.

29 C.F.R. § 541.204(b).

Plaintiff argues that, under the DOL regulation, an "other educational institution" must be either a (1) special school for physically disabled or gifted children, or (2) a post-secondary career program. (Pl.'s Mem. at 6.) Plaintiff argues that ALCC fits into neither of these categories and is therefore not an "other educational institution." (Pl.'s Mem. at 6–7.) Defendants argue that ALCC is an "other educational institution" because it is a post-secondary career program.[3]

---

[2] As another court in this District has observed, "29 C.F.R. § 541.204(b) appears to use the term 'other educational institution' and 'other educational establishment' interchangeably in the section defining the umbrella term 'educational establishment' used in 29 C.F.R. § 541.303(a)." *Fernandez v. Zoni Language Centers, Inc.*, No. 15 Civ. 06066, 2016 WL 2903274, at *5 n.1 (S.D.N.Y. May 18, 2016). This opinion uses the phrases "other educational institution" to avoid confusion with the umbrella term "educational establishment." *See id.*

[3] Defendants argue that ALCC is a post-secondary career program because it is licensed by the New York State Department of Education and accredited by the CEA, which is recognized by the U.S. Department of Education as an approved national accrediting organization. (*See* Defs.' Reply Mem. of Law ("Reply") at 7–8, ECF No. 36.) As another court in this District has recognized, however, "the fact that an institution is 'licensed by a state agency responsible for the state's educational system' or is 'accredited by a nationally recognized accrediting organization for career schools' does not make that organization a 'post-secondary career

The regulation states that "the term 'other educational establishment' *includes* special schools for mentally or physically disabled or gifted children." 29 C.F.R. § 541.204(b) (emphasis added). It also provides that post-secondary career programs may also be educational institutions based upon certain factors.[4] *Id.* Special schools for physically disabled or gifted children and post-secondary career programs, however, are not the full extent of the "other educational institution[s]" covered by the DOL's regulations. ALCC may be an "other educational institution" without being either a (1) special school for physically disabled or gifted children or (2) post-secondary career program. *Fernandez*, 2016 WL 2903274, at *6.

Section 541.204(b) offers only limited guidance about what makes an organization an "other educational institution." That section lists two factors "relevant for determining" whether a "post-secondary career program" is an "educational institution:" (1) whether it is "licensed by a state agency responsible for the state's educational system," and (2) whether it is "accredited by

---

program' within the terms of the regulation." *Fernandez*, 2016 WL 2903274, at *5. The language of the regulation makes clear that licensure and accreditation are only "[f]actors relevant in determining whether post-secondary career programs are educational institutions . . . ." 29 C.F.R. § 541.204(b). Licensure and accreditation alone do not automatically establish that a post-secondary career program is an educational institution. *See Fernandez*, 2016 WL 2903274, at *5.

[4] DOL's regulations do not provide a special definition of the term "post-secondary career program." "As a matter of general understanding, a 'post-secondary career program' provides technical or vocational training to individuals, usually adults, seeking entrance or advancement in a particular field of work." *Fernandez*, 2016 WL 2903274, at *5. Examples of institutions that courts have held are "post-secondary career programs" include schools offering automotive technician programs, *Franklin v. Breton Int'l, Inc.*, No. 06 Cin. 04877, 2006 WL 3591949, at *1, 4 (S.D.N.Y. Dec. 11, 2006), and schools offering courses in the operation of over-the-road tractor trailers and trucks, *Gonzales v. New England Tractor Trailer Training Sch.*, 932 F. Supp. 697, 702 (D. Md. 1996). Although proficiency in English is advantageous and even necessary for many careers, ESL courses do not prepare students for a particular occupation or job. "It would stretch the plain and ordinary meaning of the phrase 'post-secondary career program' to conclude that ESL programs fit within that express category of 'other educational institution[s].'" *Fernandez*, 2016 WL 2903274, at *6. ALCC therefore is not a post-secondary career program.

a nationally recognized accrediting organization for career schools." 29 C.F.R. § 541.204(b). Although the regulation requires that those two factors be considered when determining whether an organization is a post-secondary career program, courts have considered accreditation and licensure as factors in deciding whether certain non-traditional schools are "educational establishments."

In determining whether an organization is an educational institution, courts have considered six additional factors as well: (1) the title held by the organization's employees, (2) the certifications required of teachers, (3) the formality of the courses, (4) whether the organization grants certificates or degrees, (5) the organization's charter, and (6) the teacher's involvement in organizing, communicating, and delivering the curriculum. *Fernandez*, 2016 WL 2903274, at *8 (citing *Escobedo v. Constr. Laborers' Educ., Training & Apprenticeship Fund of Minn. & N.D.*, No. Civ. 11-3653, 2012 WL 4838880, at *1 (D. Minn. Oct. 11, 2012) and *Astor v. United States*, 79 Fed. Cl. 303, 316 (2007)).

ALCC is both licensed by the New York State Education Department and, since 2013, accredited by the CEA, which is recognized by the U.S. Department of Education as an approved national accrediting organization. (*See* Malley Decl., Ex. B., ALCC Record, Bureau of Proprietary Sch. Supervision, N.Y. State Educ. Dep't, ECF No. 30-2; Malley Decl., Ex. C., ALCC Record, Database of Accredited Postsecondary Institutions and Programs, U.S. Dep't of Educ., ECF No. 30-3; Malley Decl., Ex. D., CEA Record, U.S. Dep't of Educ., ECF No. 30-4). Licensure and accreditation are strong evidence that an organization is an "educational institution." *See Fernandez*, 2016 WL 2903274, at *11–12. Accordingly, the two factors drawn from section 541.204(b) both weigh in favor of finding that ALCC is an educational institution.

The six other factors that courts look to in determining whether an organization is an educational institution also weigh in favor of finding that ALCC is an educational institution. First, Plaintiff continually refers to himself as an "ESL Teacher." (*See, e.g.*, Am. Compl. ¶ 5, 6, 7.) The FLSA's "professional capacity" exemption specifically covers teachers. 29 C.F.R. § 541.303(a). This factor, although not afforded great weight when it "captures only what plaintiffs call themselves," weighs in favor of finding that ALCC is an educational institution. *Fernandez*, 2016 WL 2903274, at *8. ALCC claims to have over ninety active teachers who are "highly experienced and dedicated professionals." (ALCC, *Our Teachers*, http://www.learnenglish.com/tourteachers.htm (last visited July 28, 2016).)

Second, the New York State regulation under which ALCC is certified has significant requirements for ESL teachers. Plaintiff concedes that ALCC is licensed by the New York State Education Department. (*See* Feb. 23, 2016 Tr. at 33:18–21.) The license subjects ALCC to a New York State regulation that requires ESL teachers at private schools to (1) "have been awarded a baccalaureate or equivalent degree from an institution licensed or recognized by the department," and (2) "have successfully completed either an English as a second language training program recognized by the department or one year of teaching experience in an English as a second language program."  8 NYCRR § 126.10(j)(3)(iii)(a).[5] The requirement that ALCC's ESL teachers have a "baccalaureate or equivalent degree," as well as additional education or experience, is "strong evidence" that ALCC is an educational institution. *Fernandez*, 2016 WL 2903274, at *9 (collecting cases). ALCC represents on its website that

---

[5] The regulation provides for a "variance" from such requirements if the New York State Commissioner of Education finds that "the applicant possesses sufficiently unique and exceptional training and/or experience that are substantially the equivalent of the requirements set forth in clause (a) of this subparagraph."  8 NYCRR § 126.10(j)(3)(iii)(b).

each of its instructors has "at least a Bachelor's degree, with many also holding a Master's degree as well." (ALCC, *Our Teachers*, http://www.learnenglish.com/tourteachers.htm (last visited July 28, 2016).)

Third, the courses offered at ALCC are similar to courses offered at traditional schools. Along with basic ESL classes, ALCC offers classes in American literature, short story writing, business English, advanced conversational English, and accent reduction. (ALCC, *ESL Courses in New York City*, http://www.learnenglish.com/courses.htm (last visited July 28, 2016).) ALCC also provides preparation for the Test of English as a Foreign Language (TOEFL), which many American universities and colleges require for potential foreign students who wish to pursue higher education. (*Id.*) These courses have quizzes and exams. (*See, e.g.*, Am. Compl. ¶ 43.) Courts have viewed such "school-like formalities as strong evidence" that an organization is an "educational institution." *Fernandez*, 2016 WL 2903274, at *10 (collecting cases).

Fourth, ALCC provides enrollees who complete its courses with certificates. (Am. Compl. ¶ 29.) ALCC does not, however, confer educational degrees, professional licenses, or continuing educational credits to its students. (Am. Compl. ¶ 28.) Although this factor would weigh more heavily in ALCC's favor if ALCC provided degrees or licenses, the fact that ALCC does provide certificates of some kind is "some evidence" that ALCC is an "educational institution." *Fernandez*, 2016 WL 2903274, at *10.

Fifth, there are no facts showing that ALCC was chartered expressly for educational purposes. However, its stated "mission is to provide quality English language instruction through a variety of courses to international and local students in a professional and supportive

atmosphere utilizing our unique English teaching methodology." (ALCC, *Home*, http://www.learnenglish.com/ (last visited July 28, 2016).)

Sixth, Plaintiff has alleged that he was at least somewhat involved in organizing, communicating, and delivering the curriculum. For example, Plaintiff alleges that his regular duties included "preparing for class," "teaching in class," and "preparing quizzes or correcting exams." (Am. Compl. ¶ 41, 45, 46.) Plaintiff's allegations concerning his teaching responsibilities lends further support to the conclusion that ALCC is an "educational institution." *See Fernandez*, 2016 WL 2903274, at *10.

The totality of the factors weigh heavily in favor of holding that ALCC is an "other educational institution" within the meaning of 29 C.F.R. 541.202(b). It is therefore an "educational establishment" within the meaning of 29 C.F.R. 541.303(a). Plaintiff is consequently exempt under section 213(a) of the FLSA from the statute's minimum wage and overtime provisions. Plaintiff's FLSA claims are DISMISSED with prejudice.

### B. Plaintiff's NYLL Claims Are Dismissed

A district court's exercise of supplemental jurisdiction is governed by 28 U.S.C. § 1367(a), which provides that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . ." Subsection (c) provides that a district court "may" decline to exercise supplemental jurisdiction over a claim if the court has dismissed all claims over which it had original jurisdiction. 28 U.S.C. § 1367(c)(3). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward

declining to exercise jurisdiction over the remaining state-law claims." *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003) (quoting *Carnegie–Mellon University v. Cohill*, 484 U.S. 343, 349-50 (1988)). Here, all of Plaintiff's FLSA claims have been dismissed. Accordingly, judicial economy, fairness, convenience and comity will be served best by declining to exercise supplemental jurisdiction over Plaintiff's remaining NYLL claims. Plaintiff's NYLL claims are DISMISSED without prejudice.

## IV.   CONCLUSION

Defendants' Motion to Dismiss the Amended Complaint is GRANTED.

The Clerk of Court is directed to close the motion at ECF No. 28 and this case.

Dated: New York, New York
July 29, 2016

SO ORDERED.

_____
GEORGE B. DANIELS
United States District Judge